Case 1:16-cv-24873-AOR Document 131 Entered on FLSD Docket 11/27/2019 Page 1 of 15
Case: 18-12689 Date Filed: 11/27/2019 Page: 1 of 2

FILED BY HH D.C.

Nov 27, 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 27, 2019

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 18-12689-HH
Case Style: Rosa Romero, et al v. Razzle Dazzle Barbershop, Inc., et al
District Court Docket No: 1:16-cv-24873-AOR

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 18-12689

_____

District Court Docket No.
1:16-cv-24873-AOR

ROSA ROMERO,
and other similarly situated individuals,
LUIS MATEO,
and other similarly situated individuals,

                                                                      Plaintiffs - Appellants,

versus

RAZZLE DAZZLE BARBERSHOP, INC.,
a Florida Profit Corporation,
RAZZLEDAZZLE BARBERSHOP II, INC.,
a Florida Profit Corporation,
RAZZLEDAZZLE BARBERSHOP MIDTOWN, LLC.,
a Florida Profit Corporation,
RAZZLEDAZZLE BARBERSHOP SOBE, LLC.,
a Florida Profit Corporation,
RAZZLEDAZZLE BARBERSHOP SOMI, LLC.,
a Florida Profit Corporation,
ELENA LINARES,

                                                                       Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: October 29, 2019
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

ISSUED AS MANDATE 11/27/2019

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12689
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-24873-AOR

ROSA ROMERO,
and other similarly situated individuals,
LUIS MATEO,
and other similarly situated individuals,

                                      Plaintiffs-Appellants,

versus

RAZZLE DAZZLE BARBERSHOP, INC.,
 a Florida Profit Corporation,
RAZZLEDAZZLE BARBERSHOP II, INC.,
a Florida Profit Corporation,
RAZZLEDAZZLE BARBERSHOP MIDTOWN, LLC.,
a Florida Profit Corporation,
RAZZLEDAZZLE BARBERSHOP SOBE, LLC.,
a Florida Profit Corporation,
RAZZLEDAZZLE BARBERSHOP SOMI, LLC.,
a Florida Profit Corporation,
ELENA LINARES,

                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 29, 2019)

Before MARCUS, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Rosa Romero and Luis Mateo sued their former employer for unpaid wages under the Fair Labor Standards Act (FLSA).  Specifically, they alleged that they were misclassified as independent contractors and that overtime wages were unlawfully withheld.  At trial, the jury found that they were independent contractors.  In this appeal, the plaintiffs argue that the district court improperly denied their motions for judgment notwithstanding the verdict, for a new trial, and for a mistrial.[1]  We disagree, and affirm.

I.

Rosa Romero and Luis Mateo worked as barbers for the defendants—Elena Linares and several of her "Razzle Dazzle" barbershops (collectively "Razzle Dazzle").  The barbers allege that, over a period of employment, they worked in excess of forty hours per week and did not receive the additional overtime pay that they were entitled to under FLSA.  In Razzle Dazzle's view, however, the barbers

---

[1] The appellees (defendants below) failed to submit a brief on appeal.

2

were not entitled to overtime pay because they were independent contractors and were therefore exempt from the overtime provisions of FLSA.

With the consent of both parties, the case was tried before a magistrate judge. Both parties presented evidence to the jury concerning employment status. The barbers introduced confidentiality and non-compete agreements describing them as "employees." In Romero's agreement, one clause explains that the barbershop invests approximately $600 to train new barbers, and that a pro-rated portion of the investment must be repaid if the new-hire leaves within six months. The barbers also introduced a "staff manual" detailing a dress code, attendance policy, and description of various job-related duties such as dusting. The staff manual contains a variety of workplace rules and states that there is "no need" for a barber to encourage customers to return "just for them." *Id.* The barbers testified that they did not set their own schedule, were not allowed to choose what hair products to use, and were required to wear specific uniforms.

Elina Linares, the owner of Razzle Dazzle, provided conflicting testimony. She testified that the barbers set their own schedules, wore what they wanted, and were free to choose the hair products they used on their clients. She also testified that the barbers could set their own price for services, and sometimes chose to give haircuts for free. She testified that the barbers were free to provide services to others as long as it was outside of the radius specified in the noncompete

agreement, and that at least one of her barbers built his own customer base at her shop and would not share his clients with other barbers. Finally, she also explained that the barbers provided their own clippers, blow dryers, combs, scissors, and other barbering equipment.

At one point during the trial, Linares testified that, in 2015, she learned about an investigation into her business by the State of Florida's Division of Workers' Compensation. Her testimony about this incident on direct examination was brief and her most relevant statement was that she never received anything in writing indicating that she violated the law or misclassified her employees. On cross-examination, the barbers' counsel pointed out that nine months earlier, at her deposition, she testified that the investigation was conducted by the Department of Labor—not the State of Florida's Division of Workers' Compensation. Linares explained that she was mistaken about the name of the agency at the time of the deposition and only learned of the correct name when she found a business card shortly before trial. Counsel continued to inquire about this investigation and, in the course of the cross-examination, revealed details to the jury about the investigation and the agency's ultimate finding in favor of Linares.

Following this cross-examination, the barbers moved for a mistrial. They argued that Razzle Dazzle's counsel should have immediately divulged the correct name of the agency when he learned of it three days earlier and that it was

improper for the jury to hear about the investigation. The judge denied the motion and said that the investigation was "a totally collateral issue," not a "major issue in the case."

The case was submitted to the jury, and it returned a verdict in favor of Razzle Dazzle. On the verdict form, the jury found that Rosa Romero and Luis Mateo were not employees of Elena Linares or the Razzle Dazzle Barbershops. Although the barbers never moved for judgment as a matter of law before the verdict was returned, they moved for a judgment notwithstanding the verdict on the issue of employment status or, in the alternative, for a new trial. The district court denied these motions.

On appeal, the barbers challenge the district court's denial of the motion for judgment notwithstanding the verdict and denial of the motion for a new trial.

II.

A motion for "judgment notwithstanding the verdict" is properly called a renewed motion for "judgment as a matter of law" under Fed. R. Civ. P. 50(b). *See* Amendments to the Federal Rules of Civil Procedure, 134 F.R.D. 525, 679–82 (1991). Generally, a district court may grant such a motion only on the grounds advanced in a motion for judgment as a matter of law under Rule 50(a)—made before the case was submitted to the jury. *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1260 (11th Cir. 2016). If a party fails to file a

5

motion under Rule 50(a) before the case is submitted to the jury, the "renewed" motion under Rule 50(b) can only be granted if plain error is shown. *Id.* at 1260 n.13. In such cases, on appeal "our inquiry is limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was noted which, if not noticed, would result in a manifest miscarriage of justice." *Sims' Crane Serv., Inc. v. Ideal Steel Prod., Inc.*, 800 F.2d 1553, 1557 (11th Cir. 1986).

"Absent an abuse of discretion, the district court's disposition of a motion for a new trial will not be disturbed on appeal, especially when that disposition was to deny the motion." *Ermini v. Scott*, ___ F.3d ___, No. 18-11220, slip op. at 13 n.4 (11th Cir. Sept. 10, 2019). A district court's decision not to grant a mistrial is also reviewed for abuse of discretion. *Frederick v. Kirby Tankships, Inc.,* 205 F.3d 1277, 1285 (11th Cir. 2000).

### III.

### A.

Because the barbers did not move for judgment as a matter of law before the case was submitted to a jury, they can only prevail on their post-verdict motion if "*plain error* can be proven." *McGinnis*, 817 F.3d at 1260 n.13 (emphasis in original); *Sims' Crane Serv., Inc.*, 800 F.2d at 1557. In fact, the only question we ask on appeal is whether there was "*any* evidence to support the jury's verdict,

6

irrespective of its sufficiency" or if an affirmance would lead to "a manifest miscarriage of justice." *Sims' Crane Serv., Inc.*, 800 F.2d at 1557 (emphasis in original). Under this standard of review, the district court did not plainly err in denying the barbers' motion for judgment notwithstanding the verdict.

The FLSA contains overtime and minimum wage protections that apply to employees, but not to independent contractors. "To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). "Employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Id.* (citation and alteration omitted). A number of factors guide this analysis: "(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; (6) the extent to which the service rendered is an integral part of the alleged employer's business." *Id.* at 1311–12.

Both sides presented evidence to the jury on this question.[2] The primary dispute involved conflicting testimony regarding the degree of control that Linares exercised over the barbers. The barbers testified that they were told when to work, what to wear, and what products to use. In stark contrast, Linares testified that the barbers set their own schedules, were free to choose their own attire, and could choose what products they used. Her testimony, if believed by the jury, meant that many of the rules in the staff manual (regarding things such as attire) were advisory and not actually required. The jury was entitled to make this credibility determination.

Evidence was also presented on the other factors. With respect to the barbers' opportunity for profit, Linares testified that the barbers could double their guaranteed hourly rate or weekly salary from tips and from sales commissions. Moreover, although the staff manual encourages barbers to share clients, Linares testified that in practice, at least some of her barbers did not share clients with others. Additional testimony from both parties addressed the personal grooming

---

[2] Although employment status is a question of law, there are underlying questions of fact that lead to this determination. *See Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 n.4 (11th Cir. 1982); *cf. Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986) (explaining that employer status is a question of law with subsidiary questions of fact). "Issues involving mixed questions of law and fact are typically resolved by juries." *Watkins v. City of Montgomery*, 775 F.3d 1280, 1288 (11th Cir. 2014); *see also Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013) (concluding that "reasonable jurors could differ as to whether [the defendant] was an employer under the requirements of the FLSA").

equipment that the barbers were required to provide, the licensing requirement by the state, the length of the working relationship, and the nature of Razzle Dazzle's business.

Clearly, some evidence was presented which supports the jury's finding. And we certainly cannot conclude that an affirmance would result in a "manifest miscarriage of justice." *Sims' Crane Serv., Inc.*, 800 F.2d at 1557. Accordingly, we find no plain error in the district court's decision.

B.

The barbers also argue that they are entitled to a new trial because the verdict was against the great weight of the evidence. We conclude, however, that the district court did not abuse its discretion in denying the barbers' motion for a new trial. "The law of this circuit holds that the trial court should grant a new trial only where the verdict is against the great weight of the evidence. And normally, this court will reverse a decision denying a motion for new trial only where there is an absolute absence of evidence to support the verdict." *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 562 (11th Cir. 1987) (citations omitted). "This is especially true where, as here, the verdict-loser failed to test the sufficiency of the evidence in the trial court by means of motions for *directed verdict and* judgment n.o.v. Under these circumstances, our inquiry is limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency." *Id.* (citations

9

and quotation marks omitted and first emphasis added); *see also Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297–98 (5th Cir. 1978) ("When, as in this case, a motion for a new trial has been made on the ground of insufficient evidence to support the verdict and the like, the failure by the losing party to move for a directed verdict still operates to foreclose consideration of the question of sufficiency on appeal.") (citation and alteration omitted); *House of Koscot Dev. Corp. v. Am. Line Cosmetics, Inc.*, 468 F.2d 64, 67–68 (5th Cir. 1972) (holding that moving for judgment notwithstanding the verdict does not cure the failure to move for a direct verdict before the case was submitted to a jury).³

Against this high standard, we cannot say that the district court abused its discretion in refusing to grant a new trial because of the weight of the evidence. The barbers failed to test the sufficiency of the evidence by means of a judgment as a matter of law (directed verdict) before the case was submitted to the jury. Accordingly, "our inquiry is limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency." *Hercaire Int'l, Inc.*, 821 F.2d at 562. As noted above, at least some evidence supports the jury verdict. The jury was entitled to choose between conflicting evidence, and the district court did not abuse its discretion by respecting the jury's decision.

---

³ In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

C.

Finally, we address the barbers' argument that the district court erred by refusing to grant a mistrial. Because the trial judge "is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury," we review the decision to deny a mistrial for abuse of discretion. *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007). "To find error warranting reversal, we must find that [the appellant] made a timely objection and that a substantial right was affected." *Frederick*, 205 F.3d 1277, 1285 (11th Cir. 2000). Here, we conclude that the district court did not abuse its discretion in concluding that the errors identified at trial by the barbers—Linares' testimony concerning the State of Florida's investigation and the alleged discovery violation—did not warrant a mistrial.

The statement made by Linares on direct examination concerning the investigation by the State of Florida Division of Workers' Compensation was unlikely to have influenced the jury in any meaningful way. On direct examination, the only response that could have influenced the jury was to the following question: "did you ever receive anything in writing from workmen's comp indicating that you were in violation of the law and that you were misclassifying your employees?" Linares responded: "No." No further questions about this investigation were asked on direct examination.

Instead of objecting at the time this testimony was introduced, however, the barbers' attorney immediately engaged in an extensive cross-examination regarding the investigation. Ultimately, during this cross-examination, the fact that the investigation ended favorably to Linares was elicited by the barbers' own attorney. Only at the end of this cross-examination did the barbers request a sidebar and a mistrial.

We cannot say that the district court erred in denying the motion for a mistrial. *First*, it is not clear that testimony about an unrelated state investigation was prejudicial. The trial court is in the best position to assess the potential prejudicial effect of testimony or evidence to a jury. *Newsome*, 475 F.3d at 1227. Here, the court concluded that a state agency's decision to cease investigating an unrelated state law violation was "totally collateral" to the issue at trial—the classification of employees under *federal* law.

*Second*, to the extent that the testimony was damaging at all, almost all of the harm stems from the details elicited by the barbers' own attorney on cross-examination. "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1340 n.5 (11th Cir. 2003). Here, instead of objecting to the testimony as soon as it was brought up on direct examination (and immediately bringing the potential discovery violation

12

to the attention of the trial court), the barbers extensively cross-examined Linares about the event. In light of this tactical decision, it was not an abuse of discretion for the trial court to reject the barbers' argument that they were prejudiced by facts that *they* elicited. *United States v. Sarras,* 575 F.3d 1191, 1216 (11th Cir. 2009) (holding that it is invited error when a party's "question elicited the very testimony about which he now complains"); *United States v. Parikh*, 858 F.2d 688, 695 (11th Cir. 1988) (concluding that it is invited error when a party "effectively caused the injury about which he now complains by questioning the witness"); *cf. Frederick,* 205 F.3d at 1286 (11th Cir. 2000) (concluding that a mistrial was not warranted where a party "could have objected when the evidence was offered on direct examination, thereby avoiding the potential problem of objecting to its own cross-examination"). In light of these considerations, we cannot conclude that the district court abused its discretion in refusing to grant the mistrial.

The judgment is **AFFIRMED.**